## CIRCUIT COURT OF FAIRFAX COUNTY

Benjamin M. Smith, Jr.,
trustee, et al.

v.

Miller and Smith
at Pembrooke, L.L.C., et al.

December 14, 2011

Case No. CL-2011-9080

By Judge Jonathan C. Thacher

This matter came before the Court on September 30, 2011, on the Defendants' Demurrer. Upon consideration of the pleadings, arguments of counsel, and the applicable governing authorities, the Court sustains Defendants' Demurrer to all counts with prejudice.

*Background*

This action comes before the court on a demurrer, and, as such, all factual allegations in the complaint are taken as true. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447, 449 (2006). The court may also consider the facts alleged in light of any documents attached to the pleadings. *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379, 382,

493 S.E.2d 516, 518 (1997). Accordingly, the following facts included in the Complaint and attached documents are considered true.

The Plaintiffs, Benjamin M. Smith, Jr., and David D. Peete, as Trustees for Wellington Associates, L.P. ("Wellington"), and Defendants, Miller and Smith at Pembrooke, L.L.C., *et al.* ("Pembrooke") own adjacent parcels of land in Prince William County, Virginia. After Wellington unsuccessfully attempted to sell its land to Pembrooke, the parties began negotiating easement rights that would allow Wellington to build a roadway across Pembrooke's land to access public highways. Without this easement and roadway, accessing Wellington's land from the then-existing highway was extremely difficult. According to the Complaint, the only means of entry to, or exit from, Wellington's property via automobile was multiple right turns off of Sudley Manor Drive in Prince William County.

The parties subsequently came to an agreement on December 20, 2007. The basic substance of this agreement was that Pembrooke would grant Wellington a *private* easement across its land in exchange for Wellington's building, and allowing Pembrooke to utilize, the roadway that would traverse Pembrooke's property. On December 20, 2007, the parties signed a Roadway Construction Agreement, a Deed of Easement and Agreement, a Deed of Sanitary Sewer Easements, and a Document Escrow Agreement. Each of the aforementioned documents was attached to Wellington's Complaint and can be considered in addition to the Complaint for the purposes of ruling on Pembrooke's demurrer. The Roadway Construction Agreement details the nature of the transaction between Wellington and Pembrooke and requires the parties to execute the Deed of Easement and Agreements and the Document Escrow Agreement.

The Deed of Easement established the timeline for Wellington's construction of the roadway. The plans for the road were to be submitted to Prince William County by January 31, 2008. The entire project was to be engineered, permitted, and bonded by September 30, 2008. Construction was to commence by April 1, 2009, and the entire project was to be substantially complete by September 30, 2009. In addition to setting out the construction timeline, the Deed of Easement required that Wellington deliver a first-priority Deed of Trust encumbering its property and securing Wellington's obligation to construct the roadway. Wellington was to deliver the Deed of Trust to an acceptable escrow agent by April 1, 2008. If Wellington failed to begin construction in a timely fashion, the Deed of Easement and Agreement granted Pembrooke the right to direct the Escrow Agent to record the Deed of Trust.

The Document Escrow Agreement provided that the Deed of Easement would be held in escrow until the parties delivered a replacement plat with a more definitive description of the location and dimension of the easement after the road was built. Although the obligations of the Escrow Agent would terminate upon delivery of a replacement plat by the two parties, the

Document Escrow Agreement specifically stipulates the obligations of the Escrow Agent terminate, at the latest, on December 31, 2008.

Wellington asserts that, although Pembrooke had knowledge that Prince William County planned on dedicating the roadway to public use as early as September of 2007, Pembrooke represented to Wellington throughout contractual negotiations that Wellington would have a private easement across Pembrooke's land. Wellington, however, knew of Prince William County's intent to dedicate the roadway to public use by April 28, 2008.

Wellington never delivered the Deed of Trust to the Escrow Agent. Furthermore, Wellington never began construction on the roadway. The obligations of the Escrow Agent expired on December 31, 2008. All of the relevant construction dates established in the Deed of Easement passed without construction commencing. In its Complaint, Wellington asserts it was still willing to build the roadway but did not wish to do so based on the timeline established by its agreement with Pembrooke.

On March 10, 2010, Wellington entered into a contract with Ryland Homes to sell its property for $8.97 million. Wellington's original Contract of Sale with Ryland Homes, along with all thirteen amendments to the Contract of Sale, was attached to the Complaint and will be considered along with the Complaint for the purposes of Pembrooke's demurrer. This contract provided Ryland Homes sixty days to study Wellington's property. Wellington and Ryland Homes agreed settlement would take place on December 10, 2010.

On April 19, 2010, over two years after Wellington's deadline to deliver the Deed of Trust and more than six months after the construction project was to be completed, Pembrooke filed a suit in Prince William County, Virginia, for specific performance against Wellington demanding delivery of the Deed of Trust and filed a *lis pendens* against Wellington's property. Pembrooke served Wellington with the Complaint on May 7, 2010, three days before Ryland Homes' study period of Wellington's property expired. Ryland Homes requested that its study period be extended, ostensibly based on the pendency of Pembrooke's suit, and Wellington granted this request.

Ryland Homes demanded a price decrease to purchase Wellington's property on August 10, 2010. At that time, Ryland Homes offered $7.3 million for the property. After further negotiations, Wellington settled on a final sale price of $7.5 million, and Ryland Homes agreed to the price on August 25, 2010. After agreeing to the $7.5 million purchase price, the parties entered the Thirteenth Amendment to their Contract of Sale on September 28, 2010. The Amendment specifically grants Ryland Homes authority to negotiate the release of the *lis pendens* with Pembrooke. At a deposition on November 16, 2010, Pembrooke's corporate designee disclosed that Pembrooke and Ryland Homes had successfully come to an agreement for the roadway to be built by Ryland Homes.

Pembrooke released the *lis pendens* and nonsuited the specific performance action in Prince William County in November of 2010. Before the nonsuit was taken, Wellington's Plea in Bar was scheduled to be heard on December 9, 2010. On December 10, 2010, the original settlement date contemplated in the Contract of Sale, Wellington sold its land to Ryland Homes for $7.5 million.

Wellington filed its Complaint in the present action on June 20, 2011. When Wellington filed the Complaint, Ryland Homes was in the process of constructing the roadway across Pembrooke's land. Wellington filed suit against Pembrooke alleging: (1) slander of title; (2) intentional interference with contractual relations; and (3) abuse of process. On August 5, 2011, Pembrooke filed a Demurrer to all three counts of Wellington's Complaint. The Court took the Demurrer under advisement following a September 30th hearing.

*Analysis*

A. *Demurrer Standard of Review*

A demurrer tests the legal sufficiency of a pleading and should be sustained if the pleading fails to state a valid cause of action when viewed in the light most favorable to the plaintiff. Va. Code Ann. § 8.01-273; *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 303, 618 S.E.2d 331, 333 (2005). For the purposes of demurrer, the court must consider the facts alleged and any reasonable inferences that can be drawn from those facts to be true. *McDermott v. Reynolds*, 260 Va. 98, 100, 530 S.E.2d 902, 903 (2000). Although the facts alleged in the pleadings are to be considered in the light most favorable to the plaintiff, "a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Kitchen v. City of Newport News*, 275 Va. 378, 385, 657 S.E.2d 132, 136 (2008) (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006)). The court, in ruling on a demurrer, may consider the facts alleged as amplified by any written attachment added to the record on the motion. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 398, 337 S.E.2d 744, 746 (1985). A court considering a demurrer may, however, ignore a party's factual allegations contradicted by the terms of an authentic, unambiguous document admitted through craving oyer. *Ward's Equip., Inc. v. New Holland N. America, Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

B. *Slander of Title*

Wellington's primary claim against Pembrooke asserts the filing and maintenance of the *lis pendens* against Wellington's property in Prince

William County constituted a slander on Wellington's title and rendered Wellington's property unmarketable. Throughout the time period the *lis pendens* was attached to the property, Wellington and Ryland Homes negotiated multiple amendments to their Contract of Sale, and Wellington's final selling price to Ryland Homes dropped $1.47 million.

The Supreme Court of Virginia has never expressly articulated the elements necessary to state a cause of action for slander of title. Generally, however, a plaintiff must demonstrate (1) dissemination of slanderous words, (2) falsehood, (3) malicious intent, (4) and special damages. *Bison Bldg. Co., L.L.C. v. Brown,* 70 Va. Cir. 348, 355 (Fairfax 2006); *see also Lodal v. Verizon,* 74 Va. Cir. 110 (Fairfax 2007); *Sparks v. Kendall,* 73 Va. Cir. 325 (Franklin 2007).

Wellington alleges Pembrooke published false and slanderous words in the *lis pendens* because the Deed of Easement (Compl. Ex. C) had not been, and according to the Complaint, never could be released from escrow; therefore, Wellington's obligation to deliver the Deed of Trust was voided. The language of the Deed of Easement and the Escrow Agreement states Pembrooke was entitled to file the suit against Wellington demanding specific performance and to file the accompanying *lis pendens*. Compl. Ex. E. The terms of the Deed of Easement clearly obligate Plaintiffs to deliver a first-priority Deed of Trust to the Escrow Agent securing their construction obligations. Ex. C, ¶ 5.

The Deed of Easement obligated Wellington to deliver the Deed of Trust independent from the release of the Deed of Trust from escrow or the expiration of the Escrow Agreement. The duties of the Escrow Agent terminated, at the latest, on December 31, 2008 (Ex. E, ¶ 4), a full nine months before the earliest construction completion deadline. Adopting Wellington's interpretation of the contractual provisions, Pembrooke would have had no recourse if the Deed Escrow Agreement terminated Wellington's underlying obligation on the Deed of Easement to deliver a Deed of Trust securing their obligations if the Plaintiffs defaulted. Nothing in the Deed of Easements terminates any obligations thereunder based on the expiration of the Escrow Agreement, nor does the Escrow Agreement terminate the Deed of Easement upon the Escrow Agreement's termination.

Because the termination of the Escrow Agreement did not terminate any of the obligations created by the Deed of Easement, Pembrooke retained a right to have Wellington deliver a Deed of Trust securing its promise to construct the road. The Deed of Easement specifically provides Pembrooke the remedy of directing the Escrow Agent to Record the Deed of Trust if Wellington failed to adhere to the construction timeline. (Ex. C, ¶ 5.) After Wellington failed to even begin road construction before the September 30, 2009, completion date, Pembrooke had the absolute right to file suit in Prince William County seeking specific performance requiring Wellington

to deliver the first-priority Deed of Trust and had the absolute right to file a *lis pendens* notifying potential purchasers about the pendency of the action.

## C. *Malice*

The third element of stating a claim for slander of title is demonstrating malice on the part of the Defendant. *Bison Bldg. Co., L.L.C. v. Brown*, 70 Va. Cir. 348, 355 (Fairfax 2006). The Virginia Supreme Court defines malice as follows:

> [S]ome sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff; or what, as a matter of law, is equivalent to malice, that the communication was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff.

*Preston v. Land*, 220 Va. 118, 120-21, 255 S.E.2d 509, 511 (1979).

In its Complaint, Wellington alleges the filing and maintenance of the *lis pendens* was malicious either because it was done with the intent to injure the Plaintiff (¶ 39) or because the *lis pendens* was filed with reckless disregard for the effect it would have on the Plaintiffs' contract with Ryland Homes (¶ 40).

Malice requires some showing of a "sinister or corrupt" motive or reckless disregard for the rights of others. *Preston v. Land*, 220 Va. at 120-21. Although the Complaint repeatedly alleges that Pembrooke maintained the *lis pendens* for their own personal benefit and profit, the Complaint does not allege the suit was maintained to specifically injure Wellington or for any of the other enumerated disfavored purposes. The Complaint and its attached exhibits instead are demonstrative of the notion that Pembrooke was attempting to obtain the benefit it contracted for with Wellington.

Furthermore, the Complaint does not sufficiently allege Pembrooke acted with gross indifference or recklessness to Wellington's rights. Notably, the Thirteenth Amendment to the Plaintiffs' agreement with Ryland Homes specifically grants Ryland Homes the right to negotiate with the Defendants about releasing the *lis pendens*. Compl. Ex. G, ¶ 3.

In addition to Pembrooke's having an absolute contractual right to file the *lis pendens*, Plaintiffs' Complaint failed to allege malice sufficiently to supports its claim for slander of title. For those reasons, Pembrooke's demurrer to Count I is sustained with prejudice.

## D. *Intentional Interference with Contractual Relations*

Wellington alleges Pembrooke's filling of the *lis pendens* constituted an intentional, and impermissible, interference with the land sale contract

between Wellington and Ryland Homes. According to the Complaint, the filing and maintenance of the *lis pendens* caused the final sale price of the property to drop $1.47 million.

To state a claim for intentional, tortious, interference with contractual relations in Virginia sufficient to withstand demurrer, the Plaintiff must allege: (1) existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy on the part of the interferor, (3) intentional interference causing a breach or termination of the relationship, and (4) resultant damages to the party whose expectations were disrupted. *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102-03 (1985).

As the Court extensively noted in its discussion *supra*, Pembrooke had an absolute right to file the *lis pendens* against Wellington's property. Pembrooke had a contractual right to demand specific performance requesting delivery of a first-priority Deed of Trust. As such, Pembrooke is not subject to civil liability for its filing and maintenance of the *lis pendens*.

Of further note, the Complaint fails to satisfy the third element of intentional interference with contractual relations. Wellington and Ryland Homes participated in protracted negotiation under their Contract of Sale for Wellington's property, including making thirteen amendments to the original Contract of Sale. Although the final sale price of the property was lower than originally contemplated, the final terms were reached through mutual negotiation between Wellington and Ryland Homes. Ryland Homes neither breached nor terminated its contractual agreement and purchased the property on the original settlement date. As such, Wellington cannot allege the third prong for the cause of action of intentional interference with contract.

For the foregoing reasons, Pembrooke's demurrer to Count II is sustained with prejudice.

### E. *Abuse of Process*

Pembrooke contends the Complaint also does not state a claim for abuse of process. To withstand a demurrer for an abuse of process claim, a plaintiff must plead (1) existence of an ulterior purpose, and (2) an act in the use of process not proper in the normal prosecution of proceedings. *Montgomery v. McDaniel*, 271 Va. 465, 469, 628 S.E.2d 529, 531-32 (2006) (quoting *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 539, 369 S.E.2d 857, 862 (1988)).

In Virginia, a cause of action for malicious prosecution lies when a plaintiff wrongfully causes an action to be instituted. *Donohoe*, 235 Va. at 540, 369 S.E.2d at 862. A claim for abuse of process lies for "improper use of the process after it has been issued." *Id.* (citing *Glidewell v. Murray-Lacy & Co.*, 124 Va. 563, 570, 98 S.E. 665, 667-68 (1919)). Even if a plaintiff

demonstrates "a malicious or malevolent intent in . . . institution of process," a complaint cannot withstand demurrer if the plaintiff cannot demonstrate an improper use, or distortion of, regular process. *Montgomery*, 271 Va. at 471, 628 S.E.2d at 533 (sustaining a demurrer even though an ulterior purpose had been clearly proven because the maintenance and subsequent nonsuit of a cross-bill was not an impermissible abuse of process); *see also Ely v. Whitlock*, 238 Va. 670, 676, 385 S.E.2d 893, 897 (1989) (observing that a lawyer reporting an ethics violation of another lawyer, without more, is insufficient for a claim of abuse of process); *Triangle Auto Auction, Inc. v. Cash*, 238 Va. 183, 186, 380 S.E.2d 649, 651 (1989) (holding impermissible actions must take place after process is issued for abuse of process claim to lie).

Wellington alleges in its Complaint that Pembrooke filing the Complaint and *lis pendens* in Prince William County constitutes an abuse of process. Wellington asserts Pembrooke's ulterior purpose was to interfere with the contract between Wellington and Ryland Homes. The Complaint contends the improper act was the filing and maintenance of the *lis pendens* itself. The Complaint lacks any factual allegation of any acts other than the filing of the *lis pendens* that could support an abuse of process claim.

The institution of legal proceedings — no matter the purpose — is insufficient to survive demurrer for abuse of process if the Defendant did not commit any abusive acts after the institution of legal proceedings. Pembrooke filed its Complaint in Prince William County demanding its absolute contractual right to the delivery of a Deed of Trust and registered a *lis pendens* notifying potential buyers of the litigation between Pembrooke and Wellington. The institution of judicial proceedings cannot subject a party to an abuse or process claim.

The only legal act taken after the filing was Pembrooke's taking its first nonsuit in November of 2010. The Virginia Supreme Court in *Montgomery* anticipates this particular situation and clearly states nonsuiting a claim is not an abuse of process. *Montgomery v. McDaniel*, 271 Va. 465, 470, 628 S.E.2d 529, 532 (2006). Pembrooke took no other action that could subject it to liability. Because the Complaint alleges no actions on behalf of Pembrooke that abused the judicial process, a cause of action for abuse of process cannot go forward.

The Plaintiff makes no factual allegation stating a claim for which relief can be granted for abuse of process. Therefore, Pembrooke's demurrer to Count III is sustained with prejudice.

## Conclusion

For the reasons stated above, Defendants' demurrer is sustained with prejudice to all counts.